**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**J. Byron KLAUE, d/b/a Electro Mart, Respondent.**

**Nos. 74–1696, 74–1824.**

United States Court of Appeals, Ninth Circuit.

Sept. 22, 1975.

Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B. (argued), Washington, D. C., for petitioner.

James J. Workland (argued), of Hennessey, Curuan, Kelly & Workland, Spokane, Wash., for respondent.

OPINION

Before BARNES, WRIGHT and GOODWIN, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

The National Labor Relations Board's Decision and Order is reported at 207 N.L.R.B. No. 131 and the Board here seeks enforcement of that order. J. Byron Klaue, d/b/a Electro Mart, the employer, has cross-petitioned for review.[1]

The Board order adopted the decision of an administrative law judge, holding the employer had engaged in these unfair labor practices: (1) discriminatory discharge of an employee in violation of Sections 8(a)(3) and 8(a)(1) of the National Labor Relations Act, and (2) coercive interrogation of employees in violation of Section 8(a)(1) of the Act.[2] The employer was ordered to cease and desist from interrogating or threatening any employee concerning union or concerted activities and from making discriminatory discharges. He was further ordered to reinstate the discharged employee with back pay from the date of discharge.

Klaue, the owner of a furniture and appliance store, hired Vincent Rago as a commission salesman in September 1970. The employer was then investigating the possibility of acquiring health and accident insurance for his employees but, as of April 1971, had not obtained it. The continuing lack of insurance convinced the salesmen that they should seek union advice to see what insurance it might offer.

Rago and another salesman met with a union representative on April 15, 1971 and it was decided that the salesmen should talk to the other employees about meeting at the union hall on April 21. It was also decided that the employees should conceal their union activities from the three members of management: Klaue, supervisor Cowell, and sales manager Rodgers.

The events which led to the charge of unfair labor practices took place on April 21. Rago came to work at noon and joined a discussion among some employees concerning the union meeting that night. The discussion ended shortly thereafter when someone said, "Mr. Klaue is right around the corner and he can hear you."

Rago then went upstairs to the office where he received his regular commission check for the two preceding weeks. While there, supervisor Cowell said, "I hear you are going to that union meeting tonight." Rago said, "Yes," and Cowell remarked, "Well, when you go, you had better have some job leads handy." Rago asked, "Are you kidding? Is it that bad?" Cowell responded that it was, then left the office.

At about 1:00 P.M. Rago had a conversation with the owner's son, James Klaue, who was employed at the store. He told James for the first time about the meeting that night and they agreed that the fact of the meeting should be kept secret from the senior Klaue. James then left to make deliveries, not returning for the balance of the afternoon.

At 3:00 P.M. Rago was summoned to the office of Klaue, the owner. Klaue told Rago that he was discharging him because "you are too good of a man to sit around with no business coming in the door and it is not going to be good for you." Klaue thought that Rago "could do better somewhere else." Rago contradicted Klaue, stating that the real

---

1. In a prior proceeding Klaue petitioned for review of the Board's order which had rejected his exceptions to the findings of the administrative law judge because they were not timely filed. This court remanded the case to the Board with directions to consider the case on the merits "as though the exceptions were timely filed." *Klaue v. N.L.R.B.*, No. 72–1999.

2. Sections 8(a)(1) and (3), 29 U.S.C. §§ 158(a)(1), (3), in pertinent part provide:

"(a) It shall be an unfair labor practice for an employer—
(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7] of this title;

.     .     .     .     .     .

(3) by discrimination in regard to  .  .  . tenure of employment  .  .  . discourage membership in any labor organization.
.  .  .  ."

reason for the discharge was his involvement in the union meeting. Klaue denied having any previous knowledge of the meeting.[3]

Shortly after Rago left the store Kimmel and Walker, two other salesmen were called to Klaue's office. Klaue "questioned them whether they would honor their commitment regarding concerted activity or whether they would remain loyal members of his 'team'."[4] Kimmel asked if Rago had been terminated because of his union activities and Klaue replied in the negative.

Approximately two months after the discharge, unfair labor practice charges were filed against Klaue.

The primary issue for our consideration is whether there is substantial evidence viewing the record as ·a whole to support the Board's findings that the employer engaged in unfair labor practices. *Universal Camera Corp. v. N.L. R.B.,* 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

## THE DISCHARGE OF RAGO

██   In order to establish a violation of Section 8(a)(3) and 8(a)(1) the Board has the burden of showing that the discharge was illegally motivated. *Famet, Inc. v. N.L.R.B.,* 490 F.2d 293, 296 (9th Cir. 1973). In the absence of other circumstances, an employer has the right to discharge its employees. *N.L.R.B. v. Ayer Lar Sanitarium,* 436 F.2d 45, 49 (9th Cir. 1970). A business reason for a discharge cannot be asserted as a pretext, however, if in fact the discharge was motivated by the employee's union activities. The Board must establish that the employee would not have been

discharged but for his union activity in order to establish a violation. *Ayer Lar, supra* at 50.

██   The critical question is whether the employer was aware of Rago's union activity prior to the discharge. If Klaue did not know it, then such activity could not have motivated the discharge and the order of the Board would not be justified. *See Santa Fe Drilling Co. v. N.L.R.B.,* 416 F.2d 725, 732 (9th Cir. 1969). Since direct evidence of the state of the employer's knowledge is often unavailable, the Board may use circumstantial evidence to establish the employer's awareness of union activities. *N.L.R.B. v. Miller Redwood Co.,* 407 F.2d 1366, 1369 (9th Cir. 1969). Such inferences will be upheld if reasonable even though we might have drawn equally reasonable but opposing inferences. *N.L.R.B. v. Walton Mfg. Co.,* 369 U.S. 404, 405, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962); *Famet, supra* at 295.

The administrative law judge concluded that Klaue was aware of Rago's union activities on the basis of inferences drawn from several factual findings, most of which were adopted by the Board.[5] In examining these inferences, we find that the record as a whole does not contain substantial evidence to support the factual findings upon which the inferences are premised and thus the conclusion that Klaue was aware of Rago's activities is unreasonable.

██   The administrative law judge inferred that Klaue knew of Rago's activities because "everyone else" in his employ knew of it. We need not decide whether, if true, this would reasonably lead to the conclusion that Klaue also knew because supervisor Rodgers, one of

---

3. Although the discharge interview lasted more than an hour this was the only direct testimony as to the content of the interview. Klaue was hospitalized with a heart condition during the hearing and was unable to testify.

4. There was apparently an agreement among the salesmen that they would walk out if any were fired for union activity. They did not walk out after Rago's discharge.

5. The Board refused to impute James Klaue's knowledge of Rago's union activities to his father. Nor did it accept the finding that Rago received a draw check for the coming two-week period shortly before his discharge. The former finding was one of several offered to show that Klaue knew of Rago's union activities prior to the discharge. The latter implied that the decision to discharge Rago was a sudden change by Klaue and not based on Rago's past conduct. 207 N.L.R.B. No. 131.

only two other management personnel in addition to Klaue, testified that he did not know of the employee's union activity. This indicates that the employees were at least partially successful in their attempts to conceal the union meeting. The finding that "everyone else" knew is not supported by substantial evidence and therefore does not provide an adequate basis from which knowledge by Klaue of Rago's activities can reasonably be inferred.

Nor could the knowledge of supervisor Cowell or confidential secretary Rigby, both of whom were aware of the union meeting, be properly imputed to Klaue. No evidence was adduced which supports the proposition that either Cowell or Rigby spoke to Klaue about it. There was evidence to the contrary. Rigby had in the past failed to inform Klaue of violations of store rules and of deficiencies in Rago's paperwork. In light of these previous instances of non-disclosure by Rigby and in the absence of direct evidence that either Cowell or Rigby told Klaue of Rago's activity, it is unreasonable to impute their knowledge to the employer.

The administrative law judge also relied on the statements made by Klaue to employees Kimmel and Walker about "concerted activity" as evidence that Klaue knew of the union activity. But those statements were made after the discharge at a time when Rago had already spoken with Klaue about the union. The "concerted activity" statement shows no more than that after discharging Rago, Klaue was aware of the union activity. The relevant time for the purpose of this unfair labor practice charge is before the discharge.

■■ Finally, Klaue's knowledge was inferred from the fact that Klaue was located "behind a partition" when Rago and other employees were discussing the union meeting. The record indicates, however, that Klaue was around the corner from the employees, 30 to 35 feet away. Supervisor Cowell, who was apparently located near Klaue at this time, testified that he did not hear the discussion. Cowell's uncontradicted testimony was either ignored or discredited by the trier of fact who evidently chose to rely on the unattributed statement, "Mr. Klaue is right around the corner and he can hear you." While the trier of fact may reject uncontradicted testimony, he may not do so without good reason. *White Glove Building Maintenance, Inc. v. Brennan*, 518 F.2d 1271 (9th Cir. 1975). No reason was advanced for rejecting Cowell's testimony and the resulting inference that Klaue also did not hear the employee discussion. Reliance on the "he can hear" statement from an unidentified source in the face of uncontradicted testimony to the contrary is arbitrary and cannot support the inference that Klaue knew of Rago's union activities.

■ Deciding as we do that the evidence does not support the inference that Klaue knew of Rago's union activities, we do not need to examine the validity of the business reasons offered by the employer for the discharge. The burden is on the Board to establish an illegal motive for discharge. *Famet*, 490 F.2d at 296. It suffices to say, however, that the business slowdown experienced by the store and Rago's repeated clerical errors are not implausible reasons for discharge.

Since we find the inference that Klaue knew of Rago's role in the union activities is not supported by substantial evidence, we deny enforcement to the order of the Board in so far as it requires the employer to reinstate Rago with back pay and to cease and desist from discharging or discriminating against any employee for union activities.

## THE INTERROGATION OF KIMMEL AND WALKER

■ ■ The administrative law judge also found that Klaue violated Section 8(a)(1) when, after Rago's discharge, he asked employees Kimmel and Walker if they would remain loyal to his team rather than abide by their agreement to take concerted action if one of their fellow employees were discharged. While this specific charge was not made in the

original complaint,[6] the Board is not precluded from finding an unfair labor practice if the parties have fully litigated the issue. *Rea Trucking Co. v. N.L. R.B.*, 439 F.2d 1065, 1066 (9th Cir. 1971). Although it did not get extensive attention in either party's brief, both parties spent considerable time examining witnesses on it and it is our obligation to review the Board order on it. *See Rea Trucking, supra* at 1066 and cases cited therein.

We conclude upon the record as a whole, substantial evidence exists to support the Board's finding that the employer violated Section 8(a)(1) when he interrogated Kimmel and Walker about concerted activity shortly after the discharge of a fellow employee.

The Board order, as modified by this opinion, will be enforced.

**6.** The complaint charged that Cowell's statements about the union meeting which preceded Rago's discharge constituted a "threat of discharge" and thus violated Section 8(a)(1). Although both parties assumed in their briefs that the Board found Cowell to have threatened discharge, our reading of the record shows no such conclusion. Indeed, the conclusion of law adopted by the Board was that Klaue, not Cowell, had violated Section 8(a)(1) by interrogating employees.