**Ricardo Luis JAUREGUI,**
**Plaintiff–Appellee,**

v.

**CITY OF GLENDALE,**
**Defendant–Appellant.**

**No. 86–6750.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1988.

Decided July 26, 1988.

Scott H. Howard, Sr. Asst. City Atty., Glendale, Cal., for defendant-appellant.

David Alkire, Santa Monica, Cal., for plaintiff-appellee.

Before FERGUSON, BEEZER and LEAVY, Circuit Judges.

FERGUSON, Circuit Judge:

## I.

Officer Ricardo Luis Jauregui is an Hispanic police officer serving in the City of Glendale Police Department ("the City"). Hired as a police officer in 1973, Officer Jauregui has repeatedly, yet unsuccessfully, sought promotion to the rank of Sergeant. Since 1980, he has reached the final stage of the Police Department's promotional process on seven occasions.

The City's process for promoting police officer candidates to the supervisory rank of sergeant includes both a written and an oral examination, as well as points attributed for time on the job and the candidate's most recent performance evaluation. After the tests have been scored and the points attributed, a list is created from which the three persons ranked highest are "certified" (in order of rank) by the Civil Service Commission to the Police Department, in what is traditionally called the "rule of three."[1] Then, from that list of three candidates, the Chief of Police and the four Police Captains select the officer who will be promoted. This selection committee "assesses the suitability" of a candidate by using a combination of objective documentary criteria and subjective factors, including the candidate's interpersonal relationship skills.

After making the list of three and being passed over for promotion for the seventh time, Officer Jauregui brought suit against the City under both the disparate treatment and disparate impact theories, alleging that he had been discriminated against in violation of Title VII. The City claims

that Officer Jauregui was never promoted because he possesses poor interpersonal relationship skills and strong interpersonal skills are essential for a police supervisor.[2]

The district court concluded that Officer Jauregui had been discriminated against in violation of Title VII and should be promoted to Sergeant. The City timely appealed, arguing that the District Court made various errors in its findings of fact, conclusions of law, and evidentiary rulings that justify reversal of the judgment "without the necessity of remand."[3]

We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

### A.

█ In Title VII cases, a finding of discriminatory intent is a question of fact and reviewed under the clearly erroneous standard. *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed. 2d 518 (1985). Questions of law are reviewed de novo. *Atonio v. Wards Cove Packing Co., Inc.*, 827 F.2d 439, 443 (9th Cir.1987) (*Atonio II*), cert. denied, —— U.S. ——, 108 S.Ct. 1293, 99 L.Ed.2d 503 (1988). The City argues, however, that de novo review of all issues, including factual determinations, should be applied in cases of strong public interest to both employees and/or public agencies, particularly in Title VII actions involving promotional decisions. We reject this argument.

█ The standard of review for factual and legal determinations in Title VII cases is well established and leaves no room for variance. Factual findings are incontestably reviewed under the clearly erroneous

1. If a former sergeant seeks reinstatement, he is certified first, then followed by the top two ranking candidates.

2. In one of its findings, the district court states that "[t]he clear weight of all of the evidence ... convincingly establishes that [Officer Jauregui] was not arrogant or heavyhanded, but was rather an excellent police officer with excellent law-enforcement skills who was respected and like [sic] by his peers." It is noteworthy that although the City claims Officer Jauregui possess-

es poor interpersonal relationship skills, he has successfully served on numerous occasions as one of the Police Department's four hostage negotiators.

3. The City also claims that the district court judge displayed improper emotion during the trial which resulted in a biased and unfair judgment against the City. This argument is entirely without merit.

standard and questions of law are reviewed de novo:

> This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently ... 'In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo.*'

*Anderson,* 470 U.S. at 573, 105 S.Ct. at 1511 (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969)). Moreover,

> [i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.
>
> *This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts.*

*Anderson,* 470 U.S. at 573–74, 105 S.Ct. at 1511–12 (citations omitted) (emphasis added); *See United States v. Yellow Cab Co.,* 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949); *Gay v. Waiters' and Dairy Lunchmen's Union,* 694 F.2d 531, 540 (9th Cir.1982); *see also Yee v. Dep't of Envtl. Serv., Multnomah County,* 826 F.2d 877, 880 (9th Cir.1987). "More than mere lip service to this standard requires that we ... not ransack the record, searching for mistakes." *Casillas v. United States Navy,* 735 F.2d 338, 342–43 (9th Cir.1984) (citations omitted). We therefore refuse to adopt the City's contention, since to do so would require that we ignore well-established and well-reasoned precedent.

### B.

■ The City next argues that the District Court erred in several of its evidentiary rulings and findings of fact, and suggests that these errors are so egregious as to warrant reversal of the judgment. Evidentiary rulings, however, "are not reversible absent clear abuse of discretion," *Clady v. County of Los Angeles,* 770 F.2d 1421, 1433 (9th Cir.1985) (citation omitted), *cert. denied,* 475 U.S. 1109, 106 S.Ct. 1516, 89 L.Ed.2d 915 (1986), and this court cannot reverse "absent some prejudice." *Cassino v. Reichhold Chemicals, Inc.,* 817 F.2d 1338, 1342 (9th Cir.1987) (citation omitted), *cert. denied,* —— U.S. ——, 108 S.Ct. 785, 98 L.Ed.2d 870 (1988).

The trier of fact must assess the evidence admitted, make credibility determinations and, ultimately, make findings of fact. These decisions are entitled to substantial deference. *See Anderson,* 470 U.S. at 575, 105 S.Ct. at 1512. In reaching these decisions, the "trier of fact may properly reject uncontradicted testimony so long as it does so with good reason." *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.,* 772 F.2d 505, 514 n. 8 (9th Cir.1985) (citing *NLRB v. Klaue,* 523 F.2d 410, 414 (9th Cir.1975)). "Such evidence properly may be rejected because of its inherent unbelievability, because a witness's demeanor raises doubt as to his sincerity, or because the testimony is clouded with uncertainty." *Id.* (citing *Woods v. United States,* 724 F.2d 1444, 1452 (9th Cir.1984); *Lewis & Taylor, Inc. v. Commissioner,* 447 F.2d 1074, 1077 (9th Cir. 1971)). *See also Smith v. Commissioner of Internal Revenue,* 800 F.2d 930, 935 (9th Cir.1986). Furthermore, this court has noted that "the district judge may accept some statistical inferences and reject others based upon his perception of the oral and documentary evidence placed before him." *Contreras v. City of Los Angeles,* 656 F.2d 1267, 1273 (9th Cir.1981) (citations omitted), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 140 (1982).

### 1.

The City wished to present testimony from Officer Jauregui's former wife and her sister to support the City's defense that

Officer Jauregui possessed poor interpersonal relationship skills. The district court refused to allow this testimony on the ground that it was irrelevant since it related to events dating far before the relevant period of the lawsuit.[4]

During the trial, the City elicited testimony from approximately twenty-six persons regarding Officer Jauregui's interpersonal relationship skills. The City sought to bring forth several additional witnesses to offer similar testimony. The district court refused to allow these witnesses to testify, concluding that such testimony would be cumulative.

The City also sought to introduce testimony regarding the City-wide anti-discrimination procedures that have been in force since 1983. Three Black officers had testified that although they were victims of discrimination, they made no formal complaints through this system because they believed that to do so would be fruitless.[5] The City sought to discredit their testimony by showing that the system was indeed effective since complaints had been filed in other City departments. The district court refused this testimony, finding it irrelevant, because the lawsuit was not directed at the City of Glendale generally, but rather at the Police Department specifically.

■■■ The only apparent "prejudice" suffered by the City as a result of these evidentiary rulings is that they lost the case. Such is not sufficient prejudice, otherwise every losing party could obtain a reversal based on that fact alone. To show reversible prejudice a party must demonstrate that the allegedly erroneous eviden-

tiary ruling more probably than not was the cause of the result reached by the court. *Kisor v. Johns–Manville Corp.*, 783 F.2d 1337, 1340 (9th Cir.1986). Moreover, the record offers nothing which indicates that the district court in any way abused its discretion in making these evidentiary decisions.

2.

■■ The City challenges the accuracy of the district court's findings that at the time of trial and during the relevant time period, the supervisory levels of the Glendale Police Department were composed exclusively of white males.[6] These factual determinations, however, were made in accordance with a pre-trial conference order approved by the City.

A district court may issue a pre-trial conference order establishing facts and formulating issues to be resolved at trial under Federal Rule of Civil Procedure 16. Such an order "shall control the subsequent course of the action unless modified by a subsequent order. The order following a final pretrial conference shall be modified only to prevent manifest injustice." Fed.R.Civ.P. 16(e). This case does not qualify as the type of exceptional situation required for modification under Rule 16(e).

This Circuit recently considered and rejected a request for modification similar to the City's. In *In re Cement & Concrete Antitrust Litigation*, 817 F.2d 1435 (9th Cir.1987), the State of Arizona sought relief from the binding effect given by the district court to a pre-trial stipulation of

---

**4.** *They were divorced nine years before this litigation began.*

**5.** The district court found that the procedures in fact were ineffective.

> During the relevant time period the Glendale Police Department had no effective system to prevent instances of work place racial and ethnic harassment and discrimination. Officers who were the subject of such incidents felt that they were unable to get effective relief from an administration that condoned such activities. Although certain written policies were promulgated in compliance with federal law ... these policies in reality had not [sic] effect on the day-to-day climate of

> racial and ethnic harassment within the Glendale Police Department.

Thus the court found unconvincing the City's claim that the lack of formal complaints regarding discriminatory incidents confirmed a lack of discrimination at the Glendale Police Department.

**6.** The City also challenges other findings by the district court. Findings challenged by the City but not addressed elsewhere in this opinion relate to Officer Jauregui's qualifications and the use of the promotional process in the Glendale Police Department. These findings are supported by substantial evidence and are not clearly erroneous.

fact. In refusing to directly address Arizona's challenge to the accuracy of the stipulation, the court noted that none of the parties had sought relief from the stipulation while in the district court, nor had they on appeal questioned that the stipulation was binding or valid. Thus the court concluded that "[b]ecause the validity of the stipulation was questioned neither in the district court nor on appeal, the parties are bound by it." *Id.* at 1442.

In the instant case, the City never sought relief from the order while in the district court, even though they then possessed the same information which they now claim negates the truthfulness of the order. We will not now free the City from the binding effect of an order which recites facts they freely stipulated to, and could have previously sought judicial relief from, if indeed they were convinced that the facts are not true.

Furthermore, this information was at all times available to the City. Thus with the exercise of appropriate diligence, the City could have challenged the findings in a more timely fashion by refusing to agree to the contested fact, or by proceeding through available and more appropriate means to be relieved of the order's binding effect.[7]

### C.

#### 1.

■■■■ The complainant in a Title VII case bears the initial burden of establishing a prima facie case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). In a disparate treatment case, the burden of persuasion always stays with the plaintiff, *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093, but "[t]he

court must enter judgment for the plaintiff," unless the employer produces evidence which rebuts the presumption of discrimination created by the plaintiff's prima facie case. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. The City contends that Officer Jauregui failed to establish a prima facie case of disparate treatment.

■■■■ An individual suffers "disparate treatment" when he or she is "singled out and treated less favorably than others similarly situated on account of race or any other criterion impermissible under [Title VII]." *Gay*, 694 F.2d at 537. A plaintiff can establish a prima facie case of disparate treatment through direct proof of intentional discrimination, or by " 'offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act,' ... i.e., evidence that indicates that 'it is more likely than not' that the employer's actions were based on unlawful considerations." *Nanty v. Barrows Co.*, 660 F.2d 1327, 1331 (9th Cir.1981) (quoting *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 358, 99 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977), and *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978)); *Gay*, 694 F.2d at 538. Thus, "[u]nlike a disparate impact case, the plaintiff in a disparate treatment case must show the employer's intent to discriminate, but intent may be inferred from circumstantial evidence." *Domingo v. New England Fish Co.*, 727 F.2d 1429, 1435 (9th Cir.1984) (citations omitted), *modified*, 742 F.2d 520 (9th Cir.1984); *accord Casillas*, 735 F.2d at 342 ("Although not determinative alone, admissible impact evidence can be relevant, though often weak, circumstantial evidence of discriminatory intent."); *Gay*, 694 F.2d at 546 (prima facie case may be made "without any direct proof of discriminatory motivation.").[8]

---

7. *Contrast United States v. Camp*, 723 F.2d 741, 745–46 (9th Cir.1984) (where party reasonably relied on information supplied by *opposing* party later discovered to be false, injured party was entitled to opportunity to withdraw stipulation of fact).

8. Also, "[w]hen an employer's discriminatory treatment consists of a failure to consider an applicant's qualifications, or in the use of evaluative criteria that are discriminatory, the applicant need not prove that he or she was qualified to fill the position sought in order to obtain some relief." *Fadhl v. City and County of San*

■ Officer Jauregui established his prima facie case of disparate treatment through the evidence revealing that: 1) all persons in the supervisory ranks at the Glendale Police Department are white males; 2) the relevant personnel at the Glendale Police Department were aware of his ethnicity; 3) the general policy and practice at the Glendale Police Department had been to promote the person certified first on the list of three; 4) although ranked number one on three of the seven occasions in which he was certified for promotion, he was never promoted; and 5) the finding of the district court that there exists at the Glendale Police Department an atmosphere unconducive to inter-ethnic appreciation and respect.[9]

■ At trial, in order to overcome the presumption of discrimination established by Officer Jauregui, the City argued that Officer Jauregui had not been promoted because he lacked the strong interpersonal relationship skills necessary for a supervisory position. We reject the City's argument that specific examples of Officer Jauregui's purported lack of interpersonal relationship skills were not included in his performance evaluations because it would be a poor management practice and would erode the officer's self esteem. If this were true, performance evaluations would be worthless to the Police Department and to its officers. Moreover, another officer, a white male with lower scores on the objective examinations and promoted over Officer Jauregui, had a lack of "interpersonal relationship" skills recorded in his performance evaluations.[10] The inconsistency in the City's selective application of its asserted basis for denying promotion to Officer Jauregui itself creates an inference of unlawful discrimination.

On appeal, the City contends that the district court did not give proper attention to the role of subjective assessments in the promotional decision-making process at the Glendale Police Department.[11] From its findings, however, it is clear that the district court gave considerable attention to the Police Department's evaluation of promotional candidates according to subjective criteria, and that it concluded this stage of the process constituted the vehicle through which the discrimination Officer Jauregui suffered most directly occurred.

■ The use of subjective factors to evaluate applicants for hire or promotion is not illegal per se. *Atonio v. Wards Cove Packing Co., Inc.,* 810 F.2d 1477, 1481 (9th Cir.1987) (en banc) (*Atonio I*); *Ward v. Westland Plastics, Inc.,* 651 F.2d 1266, 1270 (9th Cir.1980). However,

[s]ubjective practices may well be a covert means to effectuate intentional discrimination ... but they can also be engendered by a totally benign purpose, or carried on as a matter of routine adherence to past practices whose original pur-

*Francisco,* 741 F.2d 1163, 1165–66 (9th Cir.1984) (citations omitted).

9. The district court found that there exists at the Glendale Police Department an atmosphere unconducive to inter-ethnic appreciation and respect.

Certain Glendale police officers routinely over a continual period of time made derogatory remarks, drew and posted inappropriate drawings and cartoons, and on one occasion posted an official police department notice which portrayed members of various minority racial and ethnic groups, including Hispanics, in a derogatory and insulting light. Although supervisors were aware of such activities, and in some cases participated in them, no disciplinary action was taken against the perpetrators, and one of the perpetrators was promoted to sergeant over the Plaintiff.…

10. This officer had a record of being inept in interpersonal relations in that he had several sustained disciplinary actions for offensive behavior and had authored at least one of the racially derogatory posters.

11. *Promotional decisions at the Glendale Police Department are made after evaluation according to subjective criteria, particularly at the final stage where the Police Chief and the other three members of the selection committee make the ultimate decision whether to promote an applicant. "[P]roving business necessity is no more onerous in a case involving subjective practices than one involving objective practices, because in either case the employer is the person with knowledge of what his practices are and why he uses the methods and criteria he does, as well as the person with superior knowledge of precisely how his employment practices affect employees." Atonio I,* 810 F.2d at 1486 (citations omitted).

poses are undiscoverable.... If, in fact, the subjective practices are a 'covert means' to discriminate intentionally, by definition intent will be difficult to prove.

*Atonio I,* 810 F.2d at 1484; *accord Atonio II,* 827 F.2d at 445 ("[c]ourts recognize that subjective criteria are ready mechanisms for discrimination."). Thus, this circuit has cautioned "that subjective practices are particularly susceptible to discriminatory abuse and should be closely scrutinized." *Atonio I,* 810 F.2d at 1481. This is especially appropriate since Title VII "proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation." *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). Thus, where subjective evaluations are made, if

> the members of the selection panel could manipulate the criteria and the weighting system in order to eliminate certain candidates, then the selection process could be used for purposes of unlawful discrimination ... [the] contention that the criteria and the weights are chosen prior to identifying the applicants is unavailing if the applicant pool is small enough or if the department supervisor had reason to believe particular individuals would apply.

*Hung Ping Wang v. Hoffman,* 694 F.2d 1146, 1149 (9th Cir.1982).

Considering the facts of this case and the potential for manipulation inherent in the use of subjective evaluations, the district court properly concluded that Officer Jauregui was a victim of disparate treatment.

### 2.

 The City also argues that the district court should have granted its mo-

tion for dismissal on the issue of disparate impact, and that the court's failure to do so constitutes reversible error.[12] Specifically, the City challenges the district court's consideration of statistical data included in the pretrial conference order.[13]

Unlike the disparate treatment theory, disparate impact focuses on "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Atonio I,* 810 F.2d at 1480 (quoting *Teamsters,* 431 U.S. at 336 n. 15, 97 S.Ct. at 1855 n. 15). The district court concluded that Officer Jauregui had established that purportedly neutral promotional processes had a disparate impact on him as an Hispanic candidate, which resulted in his being denied promotion to the rank of sergeant.

Having concluded, however, that Officer Jauregui established a violation of Title VII under the disparate treatment theory, we see no need to assess the City's challenge of the district court's finding of disparate impact. *Cf. Domingo,* 727 F.2d at 1435.

### D.

 Our conclusion that the City impermissibly discriminated against Officer Jauregui does require, however, an additional inquiry with regard to the relief to which he is entitled. The City contends that Officer Jauregui should not be awarded a retroactive promotion by the court. We disagree.

Once discrimination in an employment decision is shown, this court has held that the disadvantaged applicant should be

---

**12.** In support of this argument and many others, the City refers to the recent increase in minority hirings at the officer rank. Such information is irrelevant to the issues of discriminatory impact and treatment in *promotions* at the Glendale Police Department during the period of 1980–1985.

**13.** In support of his claim of disparate impact, Officer Jauregui offered statistical data demonstrating the substantial disparity between the number of Hispanics in the City of Glendale and

County of Los Angeles, and the absence of any Hispanics in supervisory ranks at the Glendale Police Department. The district court considered Officer Jauregui's statistical data along with the other evidence in reaching its judgment as to his disparate impact claim. Having agreed to its inclusion in the pre-trial conference order, the City cannot now challenge the relevance of Officer Jauregui's statistical data, or argue that the court should not have given it any consideration.

awarded the position retroactively unless the defendant shows " 'by "clear and convincing evidence" that even in the absence of discrimination the rejected applicant would not have been selected for the open position.' " *League of United Latin American Citizens (LULAC) v. City of Salinas Fire Dept.*, 654 F.2d 557, 558 (9th Cir.1981) (quoting *Marotta v. Usery*, 629 F.2d 615, 618 (9th Cir.1980)); *see also Ostroff v. Employment Exchange, Inc.*, 683 F.2d 302, 304 (9th Cir.1982). Moreover, "[w]here ... the plaintiff has proved intentional discrimination ... [t]he burden of showing that proven discrimination did not cause a plaintiff's rejection is properly placed on the defendant-employer because its unlawful acts have made it difficult to determine what would have transpired if all parties had acted properly." *LULAC*, 654 F.2d at 559 (citing *Day v. Mathews*, 530 F.2d 1083, 1086 (D.C.Cir.1976)).[14]

The City did not meet its burden. The City argues that the district court committed reversible error by failing to find that Officer Jauregui would not have been promoted notwithstanding discrimination. The court did not make such a finding because it plainly concluded that Officer Jauregui's national origin was the cause of his failure to be promoted.

Because Officer Jauregui proved discrimination, the district court properly granted relief in the form of promotion to the rank of Sergeant with back pay based on the difference between his salary as it would have been as a sergeant as of February 16, 1986, the date of his last denial, and attorney's fees and costs.

## CONCLUSION

None of the district court's evidentiary rulings are an abuse of discretion, and its factual findings are not erroneous. We affirm the district court's conclusion that

---

**14.** It should be remembered that this is a "defense" raised again at the relief phase of the trial. If any one of the reasons for the plaintiff's non-promotion has been held to be discriminatory, although the plaintiff "could have been denied promotion for other, legitimate, non-discriminatory reasons [the employer] would still be liable under Title VII." *Hung*

Officer Jauregui was a victim of disparate treatment in violation of Title VII, and therefore we need not reach the City's challenge to the court's finding of disparate impact.

Since the weight of the evidence establishes that national origin discrimination was the cause of Officer Jauregui's failure to be promoted, relief in the form of promotion, back pay, and attorney's fees and costs is appropriate.

The decision of the district court is AFFIRMED, and the case remanded to the district court for a determination of appropriate attorney's fees to the plaintiff and other expenses below and on appeal.

*Ping Wang*, 694 F.2d at 1148 n. 2 (citing *Kauffman v. Sidereal Corp.*, 695 F.2d 343 (9th Cir. 1982)); *Bibbs v. Block*, 778 F.2d 1318, 1324 (8th Cir.1985) (en banc) ("The defendant may avoid an award of ... promotion and back pay if it can prove ... that the plaintiff would not have been ... promoted even in the absence of the proven discrimination.").