**Kenneth YEE, Plaintiff-Appellee,**

v.

**DEPARTMENT OF ENVIRONMENTAL SERVICES, MULTNOMAH COUNTY, Defendant-Appellee.**

**No. 86–4088.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 8, 1987.

Decided Sept. 1, 1987.

Stephen L. Brischetto, Portland, Or., for plaintiff-appellee.

Lia Saroyan, Portland, Or., for defendant-appellee.

Before ANDERSON, TANG and NOONAN, Circuit Judges.

TANG, Circuit Judge:

Kenneth Yee appeals the district court's grant of judgment after a bench trial for Multnomah County Department of Environmental Services (DES) in his Title VII suit alleging DES discriminated against him because of his Chinese descent when it denied him access to training opportunities, failed to assign him preferred supervisory job duties, and rejected his application for promotion to department supervisor in favor of a Caucasian applicant. Yee contends that the district court erred in granting judgment for DES because it made no finding that DES had articulated a legitimate business reason for the first two of these employment decisions and because the articulated business reason for not selecting Yee for promotion is legally insufficient. Yee also contends the court abused its discretion in making two evidentiary rulings. We reverse.

**BACKGROUND**

Yee, an American of Chinese descent, has Bachelor of Arts degrees in general science and atmospheric science. DES hired Yee in January 1979 as a staff sanitarian in the Vector Control section, which is responsible for management and control of rodents, insects and roadside vegetation and for nuisance abatement. Peter De-Chant, a Caucasian, has a Bachelor of Science degree in biology and a certificate in public health studies. DES hired DeChant as a staff sanitarian in January 1980, and formally appointed him to the position in June 1980. Both Yee and DeChant worked under the supervision of Leo Sorenson. They were the only two sanitarians in Vector Control.

Based on a comparison of DES's treatment of Yee and DeChant, Yee contends he was discriminated against on the basis of race in that (1) he was denied equal access to various training programs; (2) he was not given equal opportunity to assume various supervisory duties; and (3) he was not given equal treatment during the selection process for maintenance supervisor.

**(1) Training programs**

The district court found that DeChant was encouraged to attend several training sessions during work hours and that the county reimbursed him for the fees. He also took various evening classes and seminars at his own expense or with reimbursement by the county. Yee did not attend these training sessions and testified that he was unaware of them until after they were over. More specifically, Yee asked to attend a chemical applicator's recertification course in 1982 but Sorenson denied his request; Sorenson encouraged DeChant to attend the course. Yee requested that the county pay for his attendance at a training seminar on cockroach control in January 1983. Sorenson told him he would have to attend on his own time and at his own expense. Yee did not attend. Sorenson allowed DeChant to attend the training seminar on work time at county expense.

**(2) Supervisory duties**

The court found that in 1981 Sorenson began assigning DeChant supervisory duties and that Yee was assigned more of DeChant's sanitarian tasks. DeChant received no increase in rank or pay but by mid-1982 was effectively supervising Vector Control. Between the spring of 1982 and June 1983, DeChant participated in meetings with other county officials, including Sorenson's supervisor, and drafted reports for Sorenson to submit to his supervisor. In March 1983, Sorenson wrote a memorandum to Vector Control personnel saying that DeChant had been named by him to assume the duties of Vector Control

supervisor. The court found there was no evidence that Yee requested that he be assigned managerial or supervisory duties, or that he assumed responsibility for such duties.

### (3) Promotion process

In May 1983, the county posted the position of maintenance supervisor in Vector Control. Yee and DeChant applied for the position. In June 1983, DeChant was notified that the 1983–84 budget would require elimination of one sanitarian position, and that he would be laid off effective June 30, 1983. Sorenson asked DeChant to provide him with a sanitarian examination given in previous years and to draft questions for the supervisor exam. DeChant drafted nine questions used on the supervisor exam; other questions were taken from previous exams. DeChant was thus familiar with 26 of the 34 questions on the oral exam given for the supervisor position. Yee testified that he was familiar with only one question.

The three person panel of examiners unanimously selected DeChant for the supervisor position.

Yee filed a charge of discrimination with the Oregon Bureau of Labor and Industries and with the Equal Employment Opportunity Commission in July 1983. On July 27, 1984, the Oregon Bureau found no substantial evidence of unlawful employment practices under Or.Rev.Stat. § 659.030. On September 7, 1984, the EEOC dismissed Yee's charges and issued a notice of right to sue. Yee filed his Title VII claim within 90 days of receipt of the notice. Based on the factual findings summarized above, the district court concluded that Yee had satisfied the elements of a prima facie case of intentional discrimination. The court also concluded that DES had met its burden of articulating legitimate nondiscriminatory reasons for its promotion of DeChant over Yee. Yee timely appeals.

### ANALYSIS

#### Standard of Review

The ultimate finding of no discriminatory intent in a Title VII action is a factual finding that may be overturned on appeal only if it is clearly erroneous. Fed.R.Civ.P. 52(a); *Anderson v. City of Bessemer,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *Pullman Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); *Gibbs v. Pierce County Law Enforcement Support Agency,* 785 F.2d 1396, 1401 (9th Cir.1986). *See also Kimbrough v. Secretary of the United States Air Force,* 764 F.2d 1279, 1281 (9th Cir.1985) ("After a Title VII case is fully tried, we review the decision under the clearly erroneous standard applicable to factual determinations."). Under the clearly erroneous test, this court must affirm the district court's determination unless "left with the definite and firm conviction that a mistake has been committed." *Gibbs,* 785 F.2d at 1401 (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).[1]

#### Yee's Title VII Claims

Yee advanced a discriminatory treatment theory, *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), based on claimed discrimination in access to training, in supervisory duty assignment, and in the pro-

---

1. This court has indicated that the conclusion a district court reaches about whether a Title VII plaintiff has satisfied the elements of a prima facie case is reviewed de. novo. *See, e.g., Clady v. County of Los Angeles,* 770 F.2d 1421, 1427 (9th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1516, 89 L.Ed.2d 915 (1986); *Thorne v. City of El Segundo,* 726 F.2d 459, 464 n. 5 (9th Cir.1983), *cert. denied,* 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984), *appeal after remand,* 802 F.2d 1131 (9th Cir.1986); *Gay v. Waiters' and Dairy Lunchmen's Union,* 694 F.2d 531, 540–45 & n. 13 (9th Cir.1982). Similarly, we have suggested without deciding the question, that the appropriate standard for reviewing the lower court's conclusion at the third stage of a discriminatory treatment case—proving that an employer's proffered explanation for differential treatment is mere pretext is also subject to de novo review. *Thorne,* 726 F.2d at 465 & n. 6. In our case as in *Thorne,* we do not need to decide whether de novo review is necessary at the final stage of analysis of a Title VII case because we would reach the same conclusion under either standard.

motion decision. The district court concluded, and we agree, that in all three respects Yee satisfied the requirements of a disparate treatment prima facie case. He demonstrated (1) that he is within a protected group; (2) that he applied for and was qualified for the position for which the employer sought applicants; (3) that despite his qualifications he was rejected; and (4) that after his rejection the employer assigned a white employee to perform the same work. *Id.* at 802–04, 93 S.Ct. at 1824–25.

When the plaintiff successfully establishes a prima facie case the burden of production shifts to the defendant employer to articulate a legitimate nondiscriminatory reason for rejecting the plaintiff. *Id.* at 802, 93 S.Ct. at 1824. To rebut the presumption of discrimination, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). The defendant must produce "evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Id.* at 254, 101 S.Ct. at 1094. *See United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).

If the defendant carries the burden, the plaintiff may then prove by a preponderance of the evidence that the proffered reason is merely a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804–05, 93 S.Ct. at 1825–26. Despite the shifting burden of production, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. Even though the initial presumption of discrimination drops from the case with the employer's articulation, the trier of fact still considers all the evidence in deciding the ultimate question of whether impermissible discrimination occurred. *Aikens,* 460 U.S. at 716, 103 S.Ct. at 1482; *Burdine,* 450

U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10; *Kimbrough,* 764 F.2d at 1283. The plaintiff can succeed in carrying his ultimate burden either directly, by "persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

In this case, in response to Yee's prima facie case, DES indicated that its nondiscriminatory reasons for promoting DeChant rather than Yee were that DeChant was more qualified by reason of education, training and experience. The trial court was persuaded that these were indeed the reasons for DeChant's promotion, and it found that the decision was based on

1) DeChant's more specialized undergraduate education, particularly his certificate in public health; 2) DeChant's more extensive technical training and supervisory experience; 3) Yee's responses to interview questions on leadership, which showed Yee to be somewhat autocratic and unyielding; and 4) DeChant's responses to the same questions, which showed his leadership style to be more flexible that (sic) Yee's.

Our inquiry is whether the evidence offered by DES, in the face of Yee's contrary evidence that discriminatory reasons were the actual basis for his rejection, was sufficient to support the district court's judgment in favor of DES. *See Thorne,* 726 F.2d at 465. We conclude that the evidence does not support the judgment.

Yee's proof at trial was intended to show both that DES's articulated reason for the promotion decision was mere pretext and that he really was rejected because of prejudice and negative stereotyping of Oriental persons. The district court refused to admit hearsay remarks of Sorenson offered by Yee to demonstrate Sorenson's discriminatory attitude toward Yee as a person of Chinese descent. Sorenson allegedly said that Yee had not been given a particular assignment because he is too small, too slight, tiny, and just "a hank of hair and a bag of bones." DES objected to the evidence under Fed.R.Evid. 801(d)(2)(C) and

(D), because Sorenson was no longer employed by DES at the time he made the remark and thus was without authority to make admissions for DES.

Yee argues that the remark falls within Rule 801(c) and is not hearsay because it was offered to prove Sorenson's state of mind (crucial to proving intent to discriminate), not the truth of the matter. Even if it is hearsay, Yee argues it should have been admitted under the reasoning of the Eleventh Circuit in *Wilson v. City of Aliceville*, 779 F.2d 631, 634 (11th Cir.1986) that racist statements by a mayor are highly probative evidence of illegal discrimination. *See also Ostroff*, 683 F.2d 302, 305 (9th Circ.1982) (hearsay admissible to prove defendant's understanding).

The district court also refused to admit an internal memorandum that alluded to DES's poor record in complying with the county's affirmative action program. DES objected to the memorandum on grounds of relevance, contending that in a treatment case evidence of a pattern or practice of discrimination is not probative of disparate treatment of an individual.

 We do not decide whether these evidentiary rulings were correct, because even without this evidence we are satisfied that the district court was clearly erroneous in its conclusion that Yee was rejected for legitimate nondiscriminatory reasons. The evidence shows indisputably that DeChant was given preferential treatment in access to training opportunities and in de facto promotion to supervisory responsibilities before the vacancy in the supervisor position. The most egregious evidence of discriminatory treatment is the evidence that DeChant was given the opportunity to cheat on the promotion examination. The presumption that he was afforded this preferential "opportunity" on the basis of impermissible discriminatory motives stands unrebutted by anything in the record.

The record shows that DeChant prepared the questions to be used during the oral examination which was the basis for the promotion decision. When the test was administered DeChant found that he was familiar with 26 of 34 of the questions. As the district court concluded, this gave DeChant a decided advantage over Yee when they competed for the maintenance supervisor's position.

The testimony of the three examiners reveals that they were favorably impressed with DeChant's more thorough, complete and knowledgeable responses to the questions posed. The district court concluded that the panel members relied on the results of the oral examination in making their decision. Because the examination was tainted by DeChant's prior familiarity with the questions, we find unavoidable the conclusion that DeChant's selection for the supervisory position was the product of discrimination. We agree with Yee that we must reverse because discrimination affected "the applicant's score or the evaluative process" itself, which is sufficient to impose liability. *See Fahdl v. City and County of San Francisco*, 741 F.2d 1163, 1166 (9th Cir.1984), *appeal after remand*, 804 F.2d 1097 (9th Cir.1986).

Because of our decision to reverse on the ultimate issue of discrimination, we need not address DES's contention that Yee did not present his case as three separate claims of discrimination, and thus cannot raise on appeal claims about denial of access to training or unequal assignment of job duties. We note, however, that this argument is specious. The three instances of discrimination—in access to training, in supervisory duty assignment, and in the promotion decision—are clearly set out in the complaint and the pretrial order, and are separately discussed by the district court. There is no requirement in the Federal Rules of Civil Procedure that the claims be set out in different counts, Fed. R.Civ.P. 8, and thus all issues were adequately raised before the trial court and preserved for appeal.

The judgment of the district court is REVERSED and the cause is REMANDED to the district court for award of damages.