**Quincy NORRIS, Plaintiff–Appellant,**

v.

**CITY AND COUNTY OF SAN FRANCISCO, et al., Defendants–Appellees.**

**No. 87–2065.**

United States Court of Appeals, Ninth Circuit.

Argued March 15, 1989.

Submitted April 6, 1989.

Decided March 29, 1990.

---

**7.** In light of this finding, we do not consider appellant's arguments regarding additional bas-

es of jurisdiction.

Michael S. Sorgen, San Francisco, Cal., for plaintiff-appellant.

Aleeta M. Van Runkle, San Francisco, Cal., for defendants-appellees.

Before POOLE, BOOCHEVER and WIGGINS, Circuit Judges.

PER CURIAM:

Quincy Norris, who is black, applied for a position as a cable splicer with the Department of Electricity of the City and County of San Francisco (the City). He took a civil service exam and was placed on a posted list of eligible candidates, but his application was eventually denied. Norris brought suit, alleging that the City unlawfully denied him employment because of his race in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* After a four day bench trial, the court entered judgment for the City and Norris timely appealed. We have jurisdiction under 28 U.S.C. § 1291. Because of the inadequacy of the district court's findings and its failure to properly

apply the law, we remand the case for further consideration in light of this disposition.

## FACTS AND PRIOR PROCEEDINGS

In December 1982, the City posted openings for three cable splicer positions. The minimum qualifications specified for the job were four years experience as a cable splicer and ability to obtain a valid California driver's license. Norris applied for a cable splicer position and took the Civil Service Commission's oral and performance tests. At the time, Norris had about twelve years of experience as a cable splicer.

On March 31, 1983, the Civil Service Commission posted a list certifying four of the eight applicants as eligible candidates for the three available positions. Norris was ranked third with a score of 308.00. William Corey, who is of Asian descent, scored 298.40 and was ranked fourth. Rudy Wassersleben, the cable splicing foreman, interviewed the first two candidates, who are white males, and hired them immediately. Both Norris and Corey were interviewed a few days later.

Three days after Norris' and Corey's interviews, Jules Beckley, the General Manager of the Department of Electricity, sent a letter to the City's Civil Service Commission requesting that his department's requisition for a third cable splicer position "be cancelled due to unanticipated personnel changes." A couple of weeks later, the Commission "disapproved" his request to cancel the requisition since a list of eligibles had already been certified, and instructed him to select a third cable splicer from among the two remaining eligible candidates. On the recommendation of Wassersleben, Beckley hired Corey. In November 1983 Corey was laid off and never rehired.

In December 1984, Joe DeRouen, a cable splicer, was promoted to a supervisory position, leaving a vacant cable splicer position. At that time, Norris was the only candidate remaining on the eligible list which was to expire on March 31, 1985. The City took no steps to fill the vacant

position until August 1985. Norris was not informed of the new posting and did not take the subsequent exam.

After learning in May 1983 that Corey had been hired, Norris filed a complaint with the City's Equal Employment Opportunity Unit (EEO). In response to the EEO investigation, Beckley stated that Corey was hired because he had "better potential." He explained that since Corey and Norris received nearly identical scores (29.8% and 30.8%, respectively) even though Norris had twelve years experience as a cable splicer and Corey had only four, he felt that Corey was the "better choice." The EEO report noted an underrepresentation of women and all minorities, except Asians, in skilled craft positions. Nevertheless, the EEO denied Norris' claim of discrimination and the Civil Service Commission rejected his appeal.

Norris then filed a charge against the City with the Equal Employment Opportunity Commission (EEOC). After a hearing, in which the City raised essentially the same defenses, the EEOC concluded that the City's articulated rationale for choosing Corey over Norris was pretextual and that, in light of the underrepresentation of minorities and women in skilled craft positions, there was probable cause to believe that race was a factor in the City's decision not to hire Norris.

The City refused the EEOC's attempts at conciliation and Norris filed this suit in the district court, alleging employment discrimination based on his race, in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* During the trial, the City offered testimonial and documentary evidence that the Department of Electricity sought to avoid hiring a third new cable splicer because of funding problems it was facing, and that when forced to make a third hire, it chose Corey over Norris because of his "greater potential." In addition, the City for the first time suggested that its decision not to hire Norris was influenced by his past employment history at Pacific Telephone. After a four day bench trial, the district court concluded that Norris had failed to establish that the City's failure to hire him was the result of unlawful discrimination.

## DISCUSSION

■ A district court's finding of no discriminatory intent is a factual finding which may not be overturned on appeal unless clearly erroneous. *Anderson v. City of Bessemer*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Pullman Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). However, the district court's findings should be "sufficiently clear and explicit so that the findings can be examined in the light of the evidence in the record and applicable legal principles." *Sumner v. San Diego Urban League, Inc.*, 681 F.2d 1140 (9th Cir.1982). Where the district court has failed to make adequate findings, we remand to the trial court to make the missing findings. *Pullman Standard*, 456 U.S. at 291, 102 S.Ct. at 1791; *Sumner*, 681 F.2d at 1142.

■ We conclude that the district court's findings in this case are inadequate to enable us to understand the basis for its decision. The court did not make any written findings of fact aside from those contained in the judgment. The judgment summarizes the facts presented at trial in a conclusory manner, omitting mention of much of the relevant evidence. Moreover, the findings contained in the written judgment do not respond to the concerns of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) which established the proper order of proof in a Title VII case. In the absence of more specific factual findings, it is impossible for us to determine whether the district court properly applied the law to the facts in this case.

The law governing burdens of proof in disparate treatment cases such as this is well established. Under *McDonnell Douglas* and *Burdine*, the plaintiff must first prove a prima facie case of discrimination by a preponderance of the evidence. Once a prima facie case has been established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. If the defendant meets this burden of production, then the plaintiff must be afforded the opportunity to show that the employer's proffered rationale is pretextual and that the disputed action was in fact motivated by impermissible discrimination. *McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. at 1824–25; *Burdine*, 450 U.S. at 252–56, 101 S.Ct. at 1093–95.

While the plaintiff retains the ultimate burden of proving discrimination throughout the litigation, the purpose of the shifting burdens is to promote the orderly presentation of evidence and to "bring the litigants and the court expeditiously and fairly to this ultimate question." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093–94. Moreover, requiring the employer to articulate a nondiscriminatory rationale for its actions serves to sharpen the factual dispute so that the plaintiff has "a full and fair opportunity to demonstrate pretext." *Id.* at 256, 101 S.Ct. at 1095. The purposes behind the shifting burdens of proof in Title VII cases cannot be served if the district court does not address these intermediate issues. *See Sumner*, 681 F.2d at 1143.

In this case, the district court judgment never makes clear whether Norris has established a prima facie case of discrimination. In *McDonnell Douglas*, the Supreme Court held that a plaintiff could establish a prima facie case of racial discrimination by showing (1) that he belongs to a racial minority; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite his qualifications, he was rejected; and (4) that, after his rejection, the position remained open and the employer continued to seek applicants. 411 U.S. at 802, 93 S.Ct. at 1824. However, this test was not intended to be rigidly applied. *Id.* at 802, n. 13, 93 S.Ct. at 1824, n. 13. Rather, a Title VII plaintiff has established a prima facie case once he has offered sufficient evidence "to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." *Teamsters v. United States*, 431 U.S. 324,

358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977).

Norris offered evidence that he is a member of a racial minority, that he applied for a job for which the City was seeking applicants and that he was qualified for the job in that he met the objective criteria established by the City. After taking oral and performance tests Norris was among the four applicants certified as eligible for hire as a cable-splicer. These undisputed facts, together with the City's rejection of Norris' application, would seem ample to support an inference that his rejection was motivated by racial discrimination. Nevertheless, the district court repeatedly referred to Norris as "minimally qualified," suggesting that he had not even established a prima facie case of discrimination.

Assuming that Norris has established a prima facie case, the City has advanced several reasons for its decision not to hire him as a cable splicer. The district court noted the various rationale advanced by the City and reached the general conclusion that the asserted reasons "are not pretextual." However, as the plaintiff has pointed out, the City rejected Norris on at least three distinct occasions: when it decided not to hire a third cable splicer, when it chose to hire Corey rather than Norris, and when it delayed filling a vacant cable splicer position until the eligible list on which Norris was the sole remaining candidate expired. For each of these three rejections the City has proffered a different nondiscriminatory reason for its actions. The district court should have considered Norris' claim of discrimination with regard to each of these employment decisions separately, examining the specific rationale offered for each decision and determining whether that explanation supported the inference of pretext.

A Title VII plaintiff may show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or *indirectly by showing that the employer's proffered explanation is unworthy of credence.*" *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095 (emphasis added). Following *Burdine,* we

have reversed a district court's finding that an employment action was based on legitimate nondiscriminatory reasons where the proffered reasons were clearly incredible. For example, in *Thorne v. City of El Segundo,* 726 F.2d 459, 467–68 (9th Cir.1983) we rejected the employer's explanation that it refused to hire the plaintiff because of her past attendance record where there was no evidence that those records were considered, or even available, at the time the employment decision was made. Similarly, in *Yee v. Dep't of Environmental Services,* 826 F.2d 877, 882 (9th Cir.1987) we discounted the employer's asserted reliance on a promotional exam where the highest scoring applicant, a white male, had been allowed to participate in preparing the questions for the exam. In both *Yee* and *Thorne* we concluded that, when considered in light of all the evidence, the employers' asserted rationale for rejecting the plaintiffs were so implausible as to be unworthy of credence. The district court should have similarly evaluated the plausibility of each of the explanations proffered by the City for its repeated rejections of Norris.

Norris was first denied a job as a cable splicer when Beckley opted not to fill the third position soon after Norris' interview. At that time, Beckley sent a letter requesting that his earlier requisition for a third cable splicer position be cancelled "due to unanticipated personnel changes." Several months later, in response to the City's EEO investigation, Beckley advanced a different reason why he avoided filling the third cable splicer position: he wrote that he did so in order to meet mandatory salary savings goals, so as to comply with the limitations of his budget from the General Fund. Then, at trial, Beckley testified that he decided not to hire a third cable splicer because of his concern about a shortfall of revenues from the Traffic Maintenance Fund. As the district court remarked to Beckley at trial, "the reasons you gave [the EEO investigator] for ... not filling the position are totally different from the reasons you're now stating." Despite its recognition that the City's rationale had shifted over time, the district court nevertheless

accepted at face value the City's explanation that Beckley was motivated solely by funding concerns.

Norris' application was rejected again when Beckley, forced to hire a third cable splicer, chose Corey. In the EEO investigation Beckley justified his choice on the grounds that he believed that Corey, who scored almost as highly although he had had less experience, somehow had "greater potential." The district court's findings entirely ignored the fact that a few months later the City used exactly the opposite reasoning to promote Joe DeRouen to a supervisory position rather than someone with less experience who had scored more highly on the promotional exam. Instead, the court relied on evidence of Norris' past work experiences both at Pacific Telephone and as a contract cable splicer in concluding that the City's reasons for rejecting him were not pretextual. It stated that "[w]hile reasons for rejecting Norris which were not known to Mr. Wassersleben at the time of his decision should be discounted, there were obviously things known to him which were appropriate to consider in making the selection between the two candidates." However, it is not at all obvious what Wassersleben *did* know about Norris when he decided to recommend Corey for the job. There was conflicting testimony at trial as to what was said during Norris' interview. Without specific findings resolving those conflicts and determining what Wassersleben knew about Norris at the time he made the decision, we cannot meaningfully review the district court's conclusion that the City's asserted rationale was not pretextual.

 Clearly, information about Norris which was unknown to Wassersleben at the time the decision was made could not have entered into the calculus of the decision and would be entirely irrelevant. Such after-acquired data cannot explain the City's decision not to hire him. *See Nanty v. Barrows Co.*, 660 F.2d 1327 (9th Cir.1981). The issue to be resolved is whether Norris' rejection, when it occurred, was then *actually* motivated by illegal discrimination, not whether the City could thereafter artic-

ulate some hypothetical nondiscriminatory reason for its decision. *See Cuddy v. Carmen,* 762 F.2d 119, 127 (D.C.Cir.1985). In determining whether the City's articulated rationale is pretextual, the district court must weigh and resolve not only what information was known to the City at the time, but also the plausibility of its explanations in light of all the evidence and the inconsistency of these explanations over time. We note that during the EEO and EEOC investigations, Beckley and Wassersleben explained their preference for Corey solely on the grounds of his "greater potential." At trial they expressed doubts about Norris' past work experience at Pacific Telephone and as a contract cable splicer for the first time. While Title VII claims are to be tried *de novo* in federal court, *Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976), and neither party is limited to the evidence presented in a prior administrative proceeding, the fact that a defendant's rationale has shifted over time would seem likely to generate serious adverse inferences as to the pretextual nature of its explanations.

Norris was rejected a third time when a new cable splicer position became vacant and the City declined to hire him despite the fact that he was the sole remaining candidate on the eligible list. Given the seemingly uncontroverted fact that Norris had raised a prima facie case, the district court should have considered whether the City had offered a plausible nondiscriminatory reason for its inaction and if so, whether that reason was pretextual.

The district court apparently failed to consider other evidence relevant to the ultimate issue of discrimination. For example, the court made no mention of the EEOC probable cause finding or the statistical evidence offered by plaintiff purporting to show that blacks had historically been underrepresented in the skilled craft positions in the City's Department of Electricity. A recent report prepared by the City itself which criticized the Department of Electricity's poor affirmative action performance was similarly overlooked, although it is clearly relevant evidence, probative of the Department's discriminatory intent. The

district court also failed to address a change in the racial designation of one of the Department's longtime employees from Caucasian to black, altering the Department's previous record of hiring only white cable splicers throughout its history. Although the employee testified at trial that his initial racial designation was incorrect, the timing of the change—soon after Norris filed his EEO complaint—certainly raises some questions regarding the motivations for the change.

Given the lack of specificity in the district court's findings, we are unable to determine what facts it found and whether it has properly applied the law. We vacate the judgment and remand to the district court to make clear findings in accordance with Rule 52(a), Fed.R.Civ.P., which address the relevant factual issues and respond to the appropriate order of proof for Title VII cases as laid out in *McDonnell Douglas* and *Burdine.*

Judgment vacated; case remanded.