953 F.2d 1386
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Sal BUA; Jorge Rios, Plaintiffs-Appellees,
v.
COUNTY OF SAN DIEGO, et al., Defendant-Appellant.
 No. 90-55949.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 10, 1991.
Decided Jan. 16, 1992.
 
 Before BEEZER, CYNTHIA HOLCOMB HALL and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 The County of San Diego appeals the entry of judgment against it following a bench trial in a Title VII employment discrimination action. The district court had jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3). We have jurisdiction over this timely appeal under 28 U.S.C. § 1291. We reverse.
 
 
 3
 Plaintiffs claim to have received disparate treatment in two ways. First, they contend that they were denied promotion from Analyst III to Analyst IV because of their race. C.R. 1, p 11(a), (b); p 15(d), (e), (f). Second, they assert that the County's practice of using provisional temporary appointments constituted a de facto training program which was denied to them and other Hispanics. Id. p 11(c).[1]
 
 
 4
 * The County utilizes three categories of appointments: (1) "permanent" appointments; (2) "certified temporary appointments"; and (3) "provisional temporary appointments." Appointments in the first two categories are drawn from a "certified list" maintained by the Department of Human Resources. The list is based largely on performance on a civil service examination, but is also compiled with the assistance of the Equal Opportunity Management Office to ensure that any minority job applicants are, by the terms of a 1977 Consent Decree, given full consideration despite objectively low civil service examination scores. The Consent Decree, which the County and the United States entered into in 1977, establishes numerical goals for the hiring of women and minorities in the County's various job classifications.
 
 
 5
 "Provisional temporary appointments," however, are not drawn from the certified list. These appointments are defined as "[t]he temporary appointment of a qualified person without certification or competition and in the absence of a Reinstatement or Regular Employment List for the class." County of San Diego, Civil Service Rules, § 17.1.1. Provisional temporary appointments are used to fill vacancies on an "emergency" or ad hoc basis until a permanent or certified temporary appointment is named, R.T. I at 107, and may last for up to one year, id. at 113. Appointments are made by individual department heads, and are not screened for compliance with the Consent Decree. Id. at 107-08.
 
 
 6
 Plaintiffs introduced evidence that, in most cases, the provisional temporary appointee was ultimately selected to a permanent position. Id. at 114. They also presented testimony that the provisional appointment system afforded training opportunities for lower level employees. Id. at 21 (Callahan testimony); id. at 118 (Nieto testimony). Victor Nieto, director of the County's equal employment opportunity management office, testified that the provisional temporary appointment system "could have been ... utilized for promotional opportunities for minorities," id. at 114, and that the system "wasn't being utilized as well as it could be to maximize the opportunity for protected group members, and appointment and placement in higher positions," id. at 115. Plaintiffs introduced memoranda written by Nieto to County department heads, encouraging them to use provisional temporary appointments to advance minorities. Id. at 116-17.[2]
 
 
 7
 There was evidence at trial that plaintiffs were certified to apply for Analyst IV positions on five separate occasions (Bua on one occasion and Rios on four), but that in each case their applications were denied. Plaintiffs also testified that over the course of ten years they submitted numerous informal applications for provisional temporary appointments, all of which were denied.
 
 B
 
 8
 "Disparate treatment" cases involve allegations that an employer treated a plaintiff differently than others because of his race, color, religion, sex, or national origin. "Disparate impact" cases, by comparison, involve allegations that a facially neutral employment practice violates Title VII because "it fall[s] more harshly on one group than another and cannot be justified by business necessity." Rose v. Wells Fargo & Co., 902 F.2d 1417, 1423 (9th Cir.1990) (citations omitted).
 
 
 9
 To prevail on a disparate treatment claim, the plaintiff is required to prove that the defendant had a discriminatory motive or intent. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). The Supreme Court has established "a series of shifting evidentiary burdens that are 'intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.' " Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 986 (1988) (quoting Burdine, 450 U.S. at 255 n. 8).
 
 
 10
 Under this scheme, the plaintiff must first establish by a preponderance of the evidence a prima facie case of disparate treatment. Burdine, 450 U.S. at 252-53. This is not an onerous burden, id. at 253, but merely requires that the plaintiff show that the employer, after having rejected the plaintiff's application for a job or promotion, continued to seek applicants with qualifications similar to the plaintiff's, id. at 253 n. 6. The employer may rebut this prima facie case simply by producing some evidence that it had legitimate, nondiscriminatory reasons for the decision to reject the plaintiff or prefer another applicant. Id. at 254. If the defendant carries this burden of production, the plaintiff must then prove by a preponderance of all the evidence in the case that the legitimate reasons offered by the defendant were a pretext for discrimination. Id. at 256.
 
 
 11
 The denial of training opportunities may constitute disparate treatment, see Lopez, 930 F.2d at 160-61; Rowlett v. Anheuser-Busch, Inc., 832 F.2d 194, 201 (1st Cir.1987); Wright v. National Archives & Records Serv., 609 F.2d 702, 715 (4th Cir.1979); Morita v. Southern Cal. Permanente Medical Group, 541 F.2d 217, 219 (9th Cir.1976), cert. denied, 429 U.S. 1050 (1977); Long v. Ford Motor Co., 496 F.2d 500, 505 (6th Cir.1974), but must be established through evidence that the plaintiff was denied a specific training opportunity, see Lopez, 930 F.2d at 161 ("[T]he plaintiff initially must bear the burden of 'offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act.' ") (quoting International Brotherhood of Teamsters v. United States, 431 U.S. 324, 358 (1977)) (emphasis added); Wright, 609 F.2d at 715 (plaintiff must introduce evidence of "specific training opportunities").
 
 
 12
 The ultimate question of discrimination is generally considered a finding of fact reviewed for clear error. Fragrante v. City and County of Honolulu, 888 F.2d 591, 594 (9th Cir.1989), cert. denied, 110 S.Ct. 1811 (1990). When, however, a finding of discrimination is based on an erroneous application of law, our review is de novo. Id.
 
 C
 
 13
 The district court found that appellees had established a prima facie case of disparate treatment.
 
 
 14
 The record requires the conclusion that the plaintiffs were not promoted to the position of Analyst IV as a result of intentional discrimination. Even if the plaintiffs did not have the benefit of Mr. Nieto's opinion that provisional and temporary appointments were used unlawfully, the circumstantial evidence is sufficient to raise an inference of unlawful discrimination. In each position at issue, the provisional or temporary appointments were used, the appointees were white, and the appointees eventually were given the job on a permanent basis. When making those appointments, the department heads were acting outside the normal civil service merit system and knew that their decisions could not be challenged by the equal opportunity management office.
 
 
 15
 Memorandum & Order at 5. The court then rejected the County's explanation for its failure to promote plaintiffs.
 
 
 16
 The defendant has not met its burden of producing a legitimate reason for excluding the plaintiffs from the pool of potential provisional or temporary appointees. The county did furnish a valid reason for the use of the provisional or temporary appointment system, i.e., to prevent work interruption during the creation of an eligibility list; however, that showing does not satisfy the defendant's burden of supplying a legitimate reason for excluding hispanics from temporary or permanent appointments.
 
 
 17
 Id. at 6.
 
 D
 
 18
 We believe the district court confused the standards for disparate treatment and disparate impact. Its focus was not, as it should have been, on the disparate treatment the plaintiffs individually suffered, i.e., not being promoted to specific Analyst IV positions. See Hung Ping Wang v. Hoffman, 694 F.2d 1146, 1147 (9th Cir.1982) (disparate treatment claim is one in which the plaintiff alleges "that application of the selection process ... resulted in discriminatory treatment."); see also Lopez v. Metropolitan Life Ins. Co., 930 F.2d 157, 161 (2d Cir.1991) (disparate treatment allegations must establish individualized disparate treatment). Rather, the court focused on a facially neutral practice--the County's provisional appointment system--that had a discriminatory impact on minority groups, a standard appropriate in disparate impact cases. See Hung Ping Wang, 694 F.2d at 1146 (describing a disparate impact claim as one which alleges "that the promotion selection process permitted a discriminatory impact on minority groups because it is predominately subjective and provides inadequate objective guidance"). Indeed, the court described the County's burden as supplying a "legitimate reason for excluding hispanics from temporary or permanent appointments"--a burden that would be appropriate only in a disparate impact case.
 
 
 19
 The court's error was compounded by its failure to make adequate factual findings. "[T]he district court's findings can be examined in the light of the evidence in the record and applicable legal principles.' " Norris v. City and County of San Francisco, 900 F.2d 1326, 1329 (9th Cir.1990)
 
 E
 
 20
 Remand is appropriate when a district court either applies the wrong legal standard, see Hung Ping Wang, 694 F.2d at 1149, or fails to make adequate findings regarding discriminatory intent, see Norris, 900 F.2d at 1329, so that a reviewing court is unable to ascertain from the record whether the plaintiff proved a violation of Title VII. This is such a case. We therefore vacate the judgment and remand to the district court to make clear findings which address the relevant factual issues and respond to the appropriate order of proof for Title VII as laid out in Burdine and the other cases cited above.
 
 
 21
 Judgment VACATED; case REMANDED.
 
 
 
 *
 Senior District Judge for the Eastern District of Wisconsin, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 At trial, plaintiffs alleged discrimination under both the "disparate treatment" and "disparate impact" theories of Title VII liability. See generally Rose v. Wells Fargo & Co., 902 F.2d 1417, 1421 (9th Cir.1990). The district court found that they had established a prima facie case only with respect to the former theory. Decision & Order at 4. Plaintiffs do not contest this finding. We therefore consider only whether the court erred in ruling in their favor on their disparate treatment claim; we do not consider whether their allegations were sufficient to state a claim for disparate impact
 
 
 [2]
 One memo read in part,
 Provisional appointments are good opportunities for appointing authorities to seek and recruit qualified women and minorities. Therefore, you're expected to use these opportunities to appoint under-utilized members to assist in meeting the interim hiring goals of the consent decree and the affirmative action plan.
 R.T. I at 116.