967 F.2d 586
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
David GARZA, Jr., Plaintiff-Appellant,
v.
INGLEWOOD CITY; Inglewood Police Department; Raymond L.
Johnson, Chief of Police, Defendants-Appellees.
 No. 91-55562.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 4, 1992.*
Decided June 9, 1992.
 
 Before D.W. NELSON, BOOCHEVER and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 David Garza, Jr., a lieutenant in the Inglewood Police Department (Department) with a long record of service, alleges that he was denied promotion to captain on two occasions on the basis of his national origin.[1] He filed this action alleging that the City of Inglewood (City) and the Inglewood Police Department (Department) had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., and 42 U.S.C. § 1983. After a bench trial, the district court entered judgment for the defendants. We affirm.
 
 I. Standard of Review
 
 3
 The district court's factual findings in a Title VII case are subject to deference, and may not be reversed unless they are clearly erroneous. Atonio v. Wards Cove Packing Co., 827 F.2d 439, 443 (9th Cir.1987), rev'd on other grounds, 490 U.S. 652 (1989).[2] However, findings regarding intent to discriminate are subject to de novo review, as are the district court's legal conclusions. Pullman-Standard Co. v. Swint, 456 U.S. 273, 288-90 (1982).
 
 II. Title VII Claims
 
 4
 An employer may violate Title VII in one of three ways. First, a hiring or promotion policy may be discriminatory on its face. Second, a plaintiff may be subject to disparate treatment by an employer on the basis of an impermissible criterion, such as national origin. Finally, a facially neutral policy may have a disparate impact on a protected class. Teamsters v. United States, 431 U.S. 324, 335-36 n. 15 (1977). Garza has not alleged that the Department's promotions policy is facially discriminatory. However, he does claim both that he was treated differently because of his national origin and that the evaluations process had a disparate impact on minority applicants. We consider each of these claims in turn.
 
 Disparate Treatment
 
 5
 To prevail upon a disparate treatment claim, "[p]roof of discriminatory motive is critical ..." Id. A plaintiff makes out a prima facie case of disparate treatment by demonstrating that (1) he is within a protected group, (2) he applied for the promotion sought, (3) he was qualified for the job, but (4) he was rejected in favor of a non-minority employee. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). The burden then shifts to the employer to articulate a "legitimate nondiscriminatory reason" for rejecting the plaintiff. Yee v. Department of Environmental Servs., 826 F.2d 877, 881 (9th Cir.1987). In turn, the plaintiff may rebut the proffered reason by proving that it is a mere pretext for discrimination. Id. Where, as here, we review the district court's findings after a trial, "the issue is no longer whether plaintiff has established a prima facie case, but whether there was discrimination." Bouman v. Block, 940 F.2d 1211, 1223 (9th Cir.), cert. denied, 112 S.Ct. 640 (1991). In making that determination, we consider all the evidence before the district court. Yee, 826 F.2d at 881.
 
 
 6
 Garza first challenges the Department's failure to "promote" him to the rank of "Acting Captain" of the Office of Special Enforcement in 1987 as a temporary replacement for an employee who was hospitalized. The district court correctly rejected this claim. The court found that the position of "Acting Captain" was a temporary appointment which as a matter of Department policy was always given to the senior lieutenant in the relevant division. The evidence demonstrated that no lieutenant had ever been transferred from another division to serve as Acting Captain.
 
 
 7
 Garza was a lieutenant in the Office of Criminal Investigations at the time the vacancy appeared. The Chief of Police filled the vacancy the next business day by appointing the senior lieutenant in the Office of Special Enforcement, as per Department policy. Garza was not "qualified" for the job according to the Department's standards, which consider only lieutenants in the same division to be qualified to serve as Acting Captain. Even if Garza were "qualified" for this job, the Department offered a legitimate business reason for not appointing him. As the district court found, "[s]uch a procedure only makes good sense from a management perspective and avoids disruption in the running and operation of the police department." This is particularly true because a lieutenant may serve as Acting Captain for as little as a few days at a time.
 
 
 8
 Garza has made no showing that these proffered reasons are pretextual. Indeed, Garza himself served as Acting Captain of his own division on three separate occasions in 1987, a fact which belies any allegedly discriminatory motive. In short, Garza has not provided evidence compelling an inference of discrimination, and the Department has offered ample nondiscriminatory reasons for its actions in filling the 1987 Acting Captain vacancy.
 
 
 9
 Next, Garza challenges the Department's failure to promote him to the position of Captain in 1989. When the Captain's position became available in 1989, the Department requested applications. Garza and four other lieutenants applied. The Department conducted a two-step evaluations process. First, each of the candidates was tested and rated by an independent Assessment Center. Garza placed third of five in this test. Second, the Department conducted an internal evaluation of the candidates. This evaluation was based on the candidates' performance evaluations over the past three years in five different areas. Garza placed fifth in this evaluation. The Department then averaged the scores to produce a final score, on which Garza again placed fifth. The lieutenant who placed first was promoted.
 
 
 10
 The Department has articulated a legitimate justification for not promoting Garza--its evaluation showed that he was less qualified for the job than Lieutenant Oliver, who was eventually promoted. See Morita v. Southern Cal. Permanente Med. Group, 541 F.2d 217, 219 (9th Cir.1976) (employers entitled to hire the best-qualified employee), cert. denied, 429 U.S. 1050 (1977).
 
 
 11
 Garza claims that the evaluations process discriminated against him. If he can demonstrate bias, the Department cannot rely on its evaluations process as a reason for rejecting Garza. See Yee, 826 F.2d at 882 (allowing white candidate to cheat on examination taints results of that examination). Garza points to the fact that part of the evaluations process was subjective, that there were no Hispanics among his raters, and that the Department looked only at Garza's evaluations for the last three years. We find his arguments unpersuasive. It is true that subjective evaluations may be subject to abuse, see Jauregui v. City of Glendale, 852 F.2d 1128, 1136 (9th Cir.1988), but they are not themselves illegal. Atonio v. Wards Cove Packing Co., 810 F.2d 1477, 1481 (9th Cir.1987) (en banc). Moreover, looking only at recent evaluations in an effort to predict future performance is perfectly reasonable, and Garza suggests no way in which that policy itself reflects a discriminatory motive. Finally, regarding the absence of Hispanic raters, the Department's raters, two black males and two white males, constituted all the employees at the rank of Captain and above. Thus, Garza's raters were not "selected"; every employee who was qualified to evaluate prospective Captains participated in the process.
 
 
 12
 We also note that the City and the Department have actively sought to increase Hispanic representation among their employees. Three department heads are Hispanic, as are approximately one-quarter of Police Department employees. City policy officially prohibits discrimination, and the City maintains an affirmative action program. Garza himself conceded that he did not believe Chief Johnson or any other Department employee discriminated against him. On the basis of the evidence presented to us, we are unable to conclude that the evaluations process reflected a discriminatory motive on the part of the Department.
 
 Disparate Impact
 
 13
 To prevail on a claim of disparate impact, a plaintiff must show that a facially neutral employment practice in fact has a significantly discriminatory effect. The employer may then justify that practice by showing that it is a "business necessity." If it does so, the plaintiff may rebut that showing by producing evidence that the asserted necessity is a mere pretext for discrimination. Connecticut v. Teal, 457 U.S. 440, 446-47 (1982).
 
 
 14
 To show a "significantly discriminatory effect," a plaintiff must generally produce statistically significant evidence that the challenged employment practice adversely affected the selection of minorities. If minorities are not in fact underrepresented among those hired, a disparate impact claim will ordinarily fail. Wards Cove Packing v. Atonio, 490 U.S. 642, 652 (1989). Only if the plaintiff can somehow show that minorities as a group were denied a full opportunity to participate can he overcome his failure to provide statistical evidence. See Teal, 457 U.S. at 450.
 
 
 15
 The pool of potential applicants for the Captain positions in 1987 and 1989 consisted of eleven lieutenants. Of these eleven, nine were white males, one was a white female, and one (Garza) was of Mexican descent. Among the supervisory personnel (Captain and above), two were black males, and two were white males. If all Title VII protected groups are aggregated for statistical purposes,[3] minorities constitute 18% of the applicant pool and 50% of those in higher positions, but 0% of those promoted in 1987 and in 1989. If only Hispanics are considered,[4] they constitute 9% of the applicant pool, 0% of those in higher positions, and 0% of those promoted in 1987 and in 1989.
 
 
 16
 Even if these percentages are deemed to show a disparity, we do not consider them statistically significant. Only one person was appointed in 1987 and in 1989; appointing Garza would have changed the percentage of those promoted who were Hispanic from 0% to 100%. Further, appointing Garza would have changed the percentage of those in higher positions who were Hispanic from 0% to 25%, and those who were minorities from 50% to 75%. Courts have consistently been unwilling to rely on sample sizes even larger than those at issue here, deeming them too small to be significant. See, e.g., Mayor v. Educational Quality League, 415 U.S. 605, 621 (1974) (sample size of 13); Simpson v. Midland-Ross Corp., 823 F.2d 937, 943 (6th Cir.1987) (sample size of 17); Contreras v. City of Los Angeles, 656 F.2d 1267, 1273 (9th Cir.1981) (sample size of 17), cert. denied, 455 U.S. 1021 (1982); Morita, 541 F.2d at 219-20 (sample size of 8). See also Watson v. Fort Worth Bank & Trust Co., 487 U.S. 977, 996-97 (1988) (plurality opinion) (cataloguing weaknesses in statistical evidence). We cannot find a disparate impact on the basis of the failure to promote one minority member--the plaintiff.
 
 
 17
 Under Teal, Garza may nevertheless show disparate impact if he can demonstrate that he was denied the opportunity to compete fairly because of his national origin. He contends that he was denied such an opportunity both in 1987 and 1989. We reject these arguments for the same reasons we rejected his disparate treatment claims. Garza was not discriminated against in 1987; everyone except the senior lieutenant in a division is routinely denied the opportunity to "apply" for Acting Captain vacancies.
 
 
 18
 In 1989, Garza was not promoted because he was ranked last in the evaluation of candidates. Employers may rely on such evaluations in disparate impact cases as long as they are valid predictors of job performance. Contreras, 656 F.2d at 1281. To establish predictive capacity, the employer must show that an examination identifies and tests certain characteristics, that those characteristics are "important element[s] of work behavior," and that the selection device is significantly correlated with those characteristics. Craig v. County of Los Angeles, 626 F.2d 659, 662 (9th Cir.1980), cert. denied, 450 U.S. 919 (1981).
 
 
 19
 The Department's internal evaluations focussed on five areas: leadership, judgement, cooperation, communication, and initiative. In addition, the independent assessment center tested candidates by means of an "in-basket" prioritization exercise, a writing assignment involving a personnel relations problem, participation in a discussion group, a presentation by the candidate of his goals for the Department, and an oral examination in which the candidate is required to deal with hypothetical problems.
 
 
 20
 The district court found that both parts of the test were significantly correlated with job performance. That finding is not clearly erroneous. All the tested factors are likely to be important attributes of a successful police captain. The Department tested those attributes by reviewing the evaluations of the candidates' superiors, who are themselves police captains and are therefore in a unique position to evaluate candidates. It also tested the candidates by using "hypotheticals" and allowing them to discuss their own goals for the Department. Garza has not challenged the nature of the evaluations process, except to complain about the lack of Hispanic raters within the Department. He has presented no evidence that the evaluations process was unfair or was not significantly predictive of job performance. Accordingly, the Department was entitled to rely on that process in selecting someone other than Garza for the position of Captain.
 
 
 21
 Garza has failed to produce evidence either of discrimination or of an adverse impact on minority applicants. The district court was therefore correct to reject his Title VII claims.
 
 III. Section 1983
 
 22
 Garza claims that he was denied a property right--specifically, his right to a promotion and attendant financial benefits--without due process of law, and he seeks damages under 42 U.S.C. § 1983. As long as the City provides adequate postdeprivation remedies, due process is satisfied. Hudson v. Palmer, 468 U.S. 517, 532-33 (1984).[5] The City has provided an adequate remedy in this case.
 
 
 23
 The City's Service Rules and Regulations contain a detailed set of employee grievance procedures which extend to claims of discrimination on the basis of national origin. Garza did not make use of this grievance procedure. Nor does he challenge its adequacy. By establishing such a procedure, the City has provided Garza all the "process" he is due in this case. The district court was therefore correct to reject Garza's section 1983 claim.
 
 IV. Trial Court Bias
 
 24
 Garza claims that he is entitled to a new trial because of the district court's "unrestrained bias, prejudice, hostility and antagonism" towards him. District court judges have "broad discretion" in conducting trials. Garza is entitled to a new trial only if the record shows "actual bias" on the part of the trial judge. United States v. Laurins, 857, F.2d 529, 537 (9th Cir.1988), cert. denied, 492 U.S. 906 (1989). Garza has failed to prove such bias.
 
 
 25
 Garza first objects to the fact that the district court "questioned" whether he was in fact Hispanic, and "refused to acknowledge that he was a Hispanic within the meaning of Title VII." We do not think this is indicative of bias in this case. Garza is a white male of Mexican descent, and his claim was for discrimination on the basis of national origin rather than discrimination on the basis of race. That the district court questioned Garza's characterization of himself as "Hispanic" or "Latino" apparently reflected its confusion as to whether those terms referred to race or to national origin, rather than any bias on the court's part.
 
 
 26
 Garza also points to the district court's "insinuat[ions]" and "abuse" of his counsel's motivations for bringing the suit. We do not condone the disparagement of counsel's motives, but find it did not reach such a level as to render the trial unfair. Garza also complains of the court's allegedly biased evidentiary rulings. Garza has not challenged these rulings on their merits, nor pointed to any way in which the district court's "insinuations" or comments might have affected its decision. Under these circumstances, we can find no evidence of "actual bias" in the record.
 
 Conclusion
 
 27
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The panel unanimously find this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Garza is a white male of Mexican descent
 
 
 [2]
 Contrary to Garza's assertion, this standard of review is not altered by the district court's adoption of the City's proposed findings "almost verbatim." Barnett v. Sea Land Service, Inc., 875 F.2d 741, 745 (9th Cir.1989)
 
 
 [3]
 See, e.g., Wards Cove, 490 U.S. at 652; Morita, 541 F.2d at 219-20 (both assuming without discussion that all minorities are aggregated for Title VII purposes)
 
 
 [4]
 See, e.g., Bouman, 940 F.2d at 1225 (assuming without discussion that only members of the group bringing suit are considered for statistical purposes)
 
 
 [5]
 This rule applies only where predeprivation due process is impracticable. That is certainly the case with regard to the 1987 appointment of an Acting Captain. That appointment was made the next business day, and the whole point of choosing an Acting Captain is to make sure there is someone in charge of the division at all times
 As to the 1989 promotion, the question of impracticability is more difficult. The Supreme Court has held that predeprivation due process is impracticable if the deprivation is caused by the unauthorized act of a government employee, rather than by established state procedure. Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982). In this case, Garza disavowed reliance on an official policy of discrimination, predicating his theory of liability instead on the idea that the City should be held liable for Chief Johnson's actions because he was in a position of authority. Whatever the validity of this theory, see Praprotnik v. City of St. Louis, 485 U.S. 112, 127 (1988), it is clearly premised on actions by a single official rather than actions taken pursuant to official City procedure. Under Logan, therefore, the City need only prove that it provides adequate postdeprivation remedies.